UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BURCICKI,

                    Plaintiff,                                    No. 12-cv-14688

vs.                                                              Hon. Gerald E. Rosen

MICHAEL HART,

                    Defendant.
_____/

OPINION AND ORDER REGARDING
AWARD OF DAMAGES TO PLAINTIFF

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on July 25, 2016

PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a physical altercation between Defendant Michael Hart

and a neighbor, Plaintiff Mark Burcicki.  The two men were involved in a scuffle the

evening of December 12, 2010.  According to Plaintiff about an hour later, Darrell Jones,

Defendant Hart's stepfather, used his authority as a Detroit police officer to get Burcicki

out of his house so that his stepson, Hart, could continue the fight. When Burcicki came

out of the house, Hart struck him violently in the head with his fist, causing Burcicki to

fall to the ground and briefly lose consciousness.  While Burcicki was on the ground, Hart

1

repeatedly punched and kicked him, causing serious injuries to his face and head. This lawsuit ensued.

Plaintiff originally sued Hart, his stepfather, Darrell Jones, and the City of Detroit alleging claims of violation of civil rights pursuant to 42 U.S.C. § 1983 against Defendant Jones and the City of Detroit, and state law claims of assault and battery against all of three defendants.

Hart was defaulted, and after a hearing held in November 2013, on February 3, 2014, the Court entered a Default Judgment as to liability against Hart, and ruled that damages would be determined at a later date. Meanwhile, the case was stayed for some time as to the City of Detroit and Defendant Jones as a result of the City of Detroit's bankruptcy. After the stay was lifted, on February 11, 2016, on the stipulation of the parties, the claims against the City of Detroit were dismissed, with prejudice. Then, on May 9, 2016, Defendant Jones entered into a settlement agreement with Plaintiff, settling all claims alleged against him.

On July 18, 2016, the Court conducted an evidentiary hearing to determine the amount of damages Plaintiff may recover from Defendant Hart. Defendant Hart attended the hearing and was afforded the opportunity to cross-examine the witnesses and to dispute Plaintiff's claims.

At the hearing, the Court heard the testimony of Plaintiff Mark Burcicki and his mother, Patrice Burcicki. The Court also received into evidence a number of photographs and documentary exhibits. Having reviewed and considered the evidence

and the entire record of this matter, the Court is now prepared to rule on this matter.

## II.  PLAINTIFF'S DAMAGES

After Plaintiff's altercation with Defendant Hart on December 13, 2010, Plaintiff was transported by his mother to the emergency room at Oakwood Hospital (now Beaumont Hospital) in Dearborn, Michigan.  According to the hospital records, Plaintiff presented in the emergency room with a swollen left eye that was bruised and unable to be opened.  He was given Dilaudid for pain and was determined to have suffered a left orbital fracture.

After the swelling was sufficiently reduced, surgery was performed.  A plate was inserted to reduce the fracture and 11 surgical screws were implanted.  Pursuant to the discharge instructions, Plaintiff followed up with Dr. Meythauler of the Wayne State University Physician Group and with the Kresge Eye Institute where it was determined that additional surgery was required.  A second surgical procedure was thereafter performed on Plaintiff's left eyelid on January 11, 2011.  The procedure was a revision of the left eyelid wound with a release of scar tissue and bilateral advancement flaps. These procedures were followed by two more plastic surgeries.

In addition to the multiple facial bone fractures and nerve damage, Plaintiff suffered traumatic brain injury which resulted in memory and concentration problems which Plaintiff testified continue to this day.  Plaintiff testified that he has short-term memory and vision problems which he never had before the incident and that he

continues to suffer from severe headaches for which he still needs treatment.  Although he admitted the feeling in his facial nerves is coming back, he knows he "still is not right."  He knows that he is supposed to have another surgery but he has been putting it off.

Plaintiff testified that he has no medical insurance.  The evidence presented at the hearing shows that Plaintiff's medical bills total $75,000.00 - $80,000.00; the bills from Oakwood Hospital alone total $45,000.00 on which Plaintiff still owes $8,000.00.  (It appears that the remaining bills have been written off by the health care providers to "charity.")  Plaintiff testified that he is still being pursued by debt collectors, apparently on the remaining $8,000.00.

Upon examination by the Court, Plaintiff testified that prior to the incident, he worked for Italy-American Construction doing seasonal masonry work on porches, chimneys, and the like, where he earned approximately $12,000.00 - $15,000.00 per year.  In the winters he plowed snow.  He did not go back to work until a year and a half after the incident.  Plaintiff testified that he tried to go back to work earlier, but the masonry work entails the use of a jackhammer which he could not tolerate because of the jolting of his head it caused.

## III.  DISCUSSION

To recover civil damages for assault, the plaintiff must show an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed

4

toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-483, 687 N.W.2d 132 (2004). To recover for battery, the plaintiff must demonstrate a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

Actual damages in an assault and battery case may be awarded for "actual physical injury and mental suffering, or sense of outrage and mortification from the humiliating indignity arising from the assault and blow so inflicted." *Robertson v. Hulbert*, 226 Mich. 219, 228, 197 N.W. 505 (1924); *see also Sagmani v. Hailo*, 2004 WL 243365 at *6 (Mich. App. Feb. 10, 2004) (award of damages for assault and battery was properly based on the nature and extent of injuries, physical disabilities or limitations due to the injuries, physical pain and suffering, mental anguish, fright and shock, embarrassment, humiliation, mortification, and expenses caused by the injuries).   In order to establish the fact of pain and suffering, it is sufficient to prove that blows were struck, blood flowed therefrom, and the victim was conscious thereafter. *Brown v. Oestaman*, 362 Mich. 614, 840, 107 N.W.2d 837 (1961) (citing *Hanna v. McClave*, 273 Mich. 571, 263 N.W. 742 (1935). The trier of fact has the authority to measure damages for pain and suffering. *Kelly v. Builders Square, Inc*., 465 Mich. 29, 34, 632 N.W.2d 912 (2001); *Sagmani*, *supra*, 2004 WL 243365 at *6.

5

In *Sagmani*, the Michigan Court of Appeals concluded that the trial court's award of $125,000 for assault and battery was properly supported by the evidence. Sagmani testified that the total amount of his medical bills was approximately $26,727. *Sagmani*, 2004 WL 243365 at *6. Additionally, Sagmani testified that he experienced chest, nose, jaw, knee, finger, neck, and arm pain resulting from the battery. *Id.* Doctors verified that, after the assault, Sagmani suffered from a broken nose, a chest wall contusion, two chipped teet, a dead nerve in one of his teeth, an injury to the temporomandibular joint in his jaw, fluid build-up in his finger, and a pinched nerve in his neck. *Id.* The Court of Appeals held that this evidence more than amply supported an award of damages in the amount of $125,000. *Id.*

The evidence in this case similarly establishes that Plaintiff Burcicki suffered significant, serious injuries. The injury to his orbital fracture required the surgical insertion of a plate and screws and at least two plastic surgeries to reconstruct his face. Additionally, he suffered nerve damage and traumatic brain injury, the effects of which he continues to experience to this date: He has short-term memory and vision problems which he never had before the incident and that he continues to suffer from severe headaches for which he still needs treatment.

The medical records admitted as evidence document the close to $80,000.00 of medical bills Plaintiff incurred. He testified that he has no medical insurance and the evidence shows that the medical bills were not paid. Although the medical providers

have written off a substantial amount, the records show that approximately $8,000.00

remains outstanding and Plaintiff testified that debt collectors have been pursuing him for

payment of this amount.

In addition, the testimony at the hearing established that Plaintiff lost wages for

approximately a year and a half  -- some $18,000 to $22,500 -- as a result of being unable

to work in the position he held for four years prior to the incident.

<u>CONCLUSION</u>

Based upon the foregoing evidence, the Court concludes that Plaintiff is entitled to

an award of damages in the total amount of $84,000.00, as follows:  $8,000.00 for

Plaintiff's unpaid medical expenses; $20,000.00 for lost wages; and $56,000.00 for the

actual injuries and the pain and suffering Plaintiff has endured as a result of the

intentional assault and battery perpetrated upon him by Defendant Michael Hart.

SO ORDERED.

s/Gerald E. Rosen
United States District Judge

Dated:  July 25, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on July 25, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135